IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **PATRICIA POMEROY**, **ENOCH ANDERSON**, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 14 C 6162 ) |
| **GREATBANC TRUST COMPANY**, an Illinois Corporation, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

This opinion need not engage in any revisit to the unsuccessful state court efforts by plaintiffs Patricia Pomeroy and Enoch Anderson to recoup the losses they sustained as victims of the fraudulent cherry-picking scheme devised and implemented by Charles Dushek Sr. and Jr. and their investment advisory firm Capital Management Associates ("CMA").[1] Now plaintiffs (both individually and on behalf of a proposed class of such victims) have turned to the federal courts, seeking to invoke the United States securities laws as their jurisdictional predicate.

GreatBanc Trust Company ("GreatBanc"), targeted by plaintiffs as a codefendant with CMA and the Dusheks (very likely because its pockets are deeper than theirs), has filed a Fed. R. Civ. P. ("Rule") 12(b)(6) motion for its dismissal from the action.[2] As Complaint ¶¶ 138-41 have set out, the Securities and Exchange Commission earlier filed a civil action (Case

---

[1] Charles Sr. is CMA's President and owner and a registered investment advisor, while Charles Jr. is a CMA employee.

[2] For a reason explained a bit later, this opinion eschews the normal Rule 12(b)(6) locution of referring to the cherry-picking scheme as merely "alleged."

No. 13 C 3669) in this District Court, also alleging Securities Exchange Act § 10(b) and Rule 10b-5 violations by CMA and the Dusheks via the same cherry-picking scheme (notably the SEC did <u>not</u> name GreatBanc as a defendant in that action). When the three culpable defendants agreed to the entry of a judgment in that case, this Court's colleague Honorable Gary Feinerman entered a consent judgment against the Dusheks and CMA under Securities Exchange Act § 21(d)(3), with the resulting disgorgement order extending to at least as much as $2,058,514 in ill-gotten profits gained and losses avoided. As this opinion's earlier "deep pocket" reference suggests, that overhanging liability has obviously served as an additional impetus for plaintiffs' attempt to extend securities law liability to GreatBanc in this lawsuit.

In brief, the cherry-picking scheme at issue in both the SEC's lawsuit and this action involved an abuse of the powers granted to Charles Sr. as plaintiffs' investment advisor pursuant to Investment Advisory Agreements ("Advisory Agreements") that plaintiffs entered into with CMA. In part CMA required in the Advisory Agreements that plaintiffs enter into a Custodial Agreement with GreatBanc, and plaintiffs would not have opened accounts with GreatBanc in the absence of that requirement.

In essence the Dusheks-CMA cherry-picking activities were really easy pickings. Dusheks, who were themselves investors for their own accounts, would make block purchases of securities -- but instead of allocating those purchases among the third-party investors and themselves at the times that the purchases were made, they would wait several days, then allocate profitable trades to their own personal accounts and unprofitable trades to the accounts of CMA clients such as plaintiffs. According to Complaint ¶¶ 84-85, during the 2008-12 period Dusheks made something in excess of $2 million in profits through the scheme, while CMA clients such as plaintiffs suffered corresponding aggregate losses.

As for GreatBanc, it is not asserted by plaintiffs to have either directed or decided how to allocate the trades. Instead Complaint ¶ 100 charges that GreatBanc's asserted role in the scheme comprised these activities:

- a. Provided securities execution services relative to all securities transactions in the GreatBanc accounts;

- b. Consummated all portfolio transactions in the Plaintiff's GreatBanc accounts through payment and delivery of securities purchased and sold;

- c. Processed all securities settlements for the GreatBanc accounts on a transactional fee basis;

- d. Represented that the allocation of securities would be performed on a fair and equitable basis;

- e. Made block purchases of securities in the GreatBanc Master Account and GreatBanc Omnibus Account.

Those activities must be evaluated in terms of plaintiffs' acknowledged sole ticket of entry to this federal court, as stated in the "Procedural Posture" prelude to plaintiffs' Response to GreatBanc's current motion:

> As a result, Plaintiffs have filed the present Complaint before this Court based solely on Rule 10b-5.

At the outset that Rule 10b-5 limitation cabins plaintiffs' claim against GreatBanc, for they make no allegations that <u>it</u> made any misrepresentations or omissions that <u>caused</u> plaintiffs to invest in the Dusheks-CMA cherry-picking scheme. But black letter securities law for almost four decades has imposed a purchaser-seller requirement for any implied private right of action under Section 10(b): <u>Blue Chip Stamps v. Manor Drugstores</u>, 421 U.S. 723, 749 (1975)

expressly held that misrepresentations or omissions that cause an investor to <u>refrain</u> from buying or selling is not actionable under Section 10(b),[3] and that principle remains good law today.

Here plaintiffs do not (and cannot) contend that GreatBanc did anything to cause them to choose CMA as their investment advisor, to choose GreatBanc as custodian or to decide to invest in any specific security. Instead Plaintiffs' Response to GreatBanc's motion contends at page 14 that "GreatBanc made material omissions every single month of the scheme in the account statements it prepared for Plaintiffs." But <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.</u>, 552 U.S. 148, 159 (2008) (citations omitted) teaches:

> Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action. It ensures that, for liability to arise, the "requisite causal connection between a defendant's misrepresentation and a plaintiff's injury" exists as a predicate for liability.

And plaintiffs' attempt in their Response to bring themselves within a rebuttable presumption of reliance by simply continuing their relationship is unavailing -- on that score our Court of Appeals' affirmance of the dismissal of Section 10(b) claims in <u>O'Brien v. Continental Ill. Nat'l Bank & Trust Co.</u>, 593 F.2d 54 (7th Cir. 1979) scotched a like contention that asserted omissions, rather than active misrepresentations, had induced pension funds to maintain their advisory relationship with their investment advisor.[4] Simply put, plaintiffs' position on this issue exemplifies their overall attempt to blur the dispositive distinctions between the sharply different

---

[3] It might of course have been plausible for courts to find that an investor's decision to hold onto an already-owned security because of another party's misrepresentation could also be characterized as an investment decision. But it is far too late in the day to invoke Section 10(b) or Rule 10b-5 as the predicate for such a claim.

[4] As might have been expected, <u>O'Brien</u>, <u>id.</u> at 58 adhered to the then-recent <u>Blue Chip Stamps</u> decision in its holding. And like <u>Blue Chip Stamps</u>, <u>O'Brien</u> too still remains good law despite its age.

roles played by the cherry-picking defendants and by GreatBanc, all in an effort to tar the latter with the same brush.

That simply won't do. On that score the controlling authority is provided by such cases as Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2302 and n.6 (2011), where the Supreme Court reconfirmed the principle that only the maker of a false statement can be sued in a private action under Section 10(b) -- in so doing, the Court followed its earlier holding in Central Bank of Denver N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 180 (1994) that Rule 10b-5's private right of action does not include suits against aiders and abettors. And in like fashion, our Court of Appeals has held in Fulton County Employees Ret. Sys. v. MGIC Inv. Corp., 675 F.3d 1047, 1051-52 (7th Cir. 2012) that Section 10(b) does not impose liability for a failure to correct another's misrepresentations.

There are more nails that the memoranda by GreatBanc's counsel have driven into the coffin of plaintiffs' asserted Rule 10b-5 claim against it -- for example, GreatBanc's R. Mem. 11-13 points to plaintiffs' failure to satisfy the 15 U.S.C. § 78u-4(b)(2)(A) statutory requirement that a plaintiff in such an action must allege a strong inference of scienter for each alleged act or omission on the part of a targeted defendant. But it is unnecessary to extend this opinion to treat with all of GreatBanc's contentions, compelling though they may be, for what has been said to this point amply supports the GreatBanc motion for its dismissal from the action.

### Conclusion

For the reasons stated in this opinion (and indeed for other reasons as well, as stated in the paragraph preceding this Conclusion), GreatBanc's Rule 12(b)(6) motion for its dismissal as a defendant is granted. This action is set for a status hearing at 9:15 a.m. December 22, 2014 to

discuss further proceedings by plaintiffs against the remaining defendants, CMA and the Dusheks.

                                                                                                       _____
                                                                                                       Milton I. Shadur
Date: December 16, 2014                                  Senior United States District Judge